**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ERICA JONES, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-2743-O** |
| | § | |
| **JGC DALLAS LLC, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference dated February 17, 2012, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court for recommendation is *Defendants' Motion to Dismiss and/or Stay this Action and to Compel Arbitration with Incorporated Memorandum of Law*, filed January 27, 2012 (doc. 38). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

In this putative Fair Labor Standards Act (FLSA) collective action, several current and former dancers (Plaintiffs)[1] at the Jaguar Gold Club (JGC) sue its member clubs,[2] its owner and manager, Bryan Scott Foster, and its president of Operations, Kevin Richardson (collectively

[1]Erica Jones, Crystal Winter, and Selisha Brooks were the original plaintiffs. (*See* doc. 1.) Ashley L. Cowart, Claudia Rede, Brandy Richbourg, Krysta L. Lehman, LaSandra Turner, Debra Arnett, Esther Eliazo, Jan Blake, Misty Perry, Carrie Peyton, Holly Hargraves, Natasha Cargile, Bridgette Batch, Kirstina Moore, Naomi Sepeda, Makeysha Isaac, Bianca Cadena, Joanna Victorino, Surrynna Nabarette, Amanda Vaughn, Christina Alexander, Christina M. Nguyen, Angela Watson, Amy Pogorelec, and Jinnene Kelly, opted in as party plaintiffs later on. (*See* docs. 6-8, 15, 32, 36-37, 41, 46, 62-63, 70, 83.) Perry, Hargraves, and Peyton later withdrew their claims against the defendants. (*See* docs. 81-82.)

[2]The JGC family of gentleman's clubs includes JGC Dallas LLC; JGC Tye, LLC; JGC Lubbock Gold, LLC; JGC Odessa Gold, LLC; Gold Suit, Inc.; JGC Harlingen, LLC; JGC Longview, LLC; JGC Edinburg, LLC; JGC Phoenix, LLC; JGC Beaumont, LLC. (*See* doc. 1 at 1.)

Defendants). (*See* doc. 35.) Plaintiffs allege that Defendants misclassified them as independent contractors instead of employees to avoid their obligations under the FLSA to pay them minimum and overtime wages, failed to pay them such wages, retaliated against them for filing this lawsuit, and failed to keep adequate records of their work hours and pay. (*Id.*)

Defendants assert counterclaims for "breach of agreement – offset damages," "unjust enrichment – offset," and "breach of contract – mandatory arbitration." (*See* doc. 39.) They mainly argue that Plaintiffs were not employees; they performed at different JGC locations pursuant to a licensing and lease agreement called the Temporary Space Lease Agreement (TSL), or similar oral or written agreements or agreements in practice. (*Id.* at 18-19.) Under these agreements, Plaintiffs could collect and retain a portion of mandatory dance fees and all of their tips but were required to pay Defendants rent or other compensation either by express agreement and/or by their actions. (*Id.*) According to Defendants, Plaintiffs were licensees, lessees, or independent contractors who worked for their own advantage on the premises of another. (*Id.* at 9-10, 15, ¶¶ 6, 35.)

Before Defendants filed their answer asserting their defenses and counterclaims, they moved to dismiss and/or stay and compel arbitration as to all performers who executed a TSL.[3] (doc. 38.) Plaintiffs filed a response (doc. 48), Defendants filed a reply (doc. 64), and the motion is now ripe.

## II. ANALYSIS

Defendants move to compel arbitration and dismiss or stay this action as to all performers

[3] In moving to dismiss or stay and compel arbitration, Defendants generally rely on Fed. R. Civ. P. 12 (b) ,which allows a defendant to present specific defenses by motion. Arbitrability is not listed as one of the defenses that could be presented through a motion to dismiss under Rule 12(b). *See Grant v. House of Blues New Orleans Restaurant Corp.*, 2011 WL 1596207, at *2 (E.D. La. 2011). The most appropriate basis for bringing Defendants' motion are §§ 2 and 3 of the Federal Arbitration Act (FAA) which authorize stays in federal district court proceedings as well as orders compelling arbitration. *See* 9 U.S.C. §§ 2 & 3. The current motion is construed as a motion to stay and compel arbitration under §§ 2 and 3 of the FAA, since Defendants repeatedly refer to the FAA in their motion and reply briefs.

who executed a TSL based on a provision requiring arbitration for any dispute arising between Defendants and any relevant performer and waiving participation in any collective or class action. (doc. 38 at 1, 10.) Plaintiffs respond that the arbitration agreement has already been found invalid and unenforceable by the district court; Defendants have failed to meet their burden of proving the existence of a valid, signed arbitration agreement; the agreements are void as a matter of law; and a recent administrative decision by the National Labor Relations Board (NLRB) affirms that class action/collective action waivers are illegal in employment arbitration agreements and inclusion of such a waiver in the TSL voids the arbitration agreement. (doc. 48 at 4-14.)

**A. Legal Standard**

The FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002 citing 9 U.S.C. §§ 3 & 4). Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel arbitration under the FAA. *See Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The first step is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb v. Instacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The second step is to determine whether any legal restraints external to the agreement foreclose arbitration of the dispute. *OPE Int'l L.P. v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (citing *Mitsubishi*, 473 U.S. at 628).

Given the federal policy favoring arbitration, the court's task is narrowly circumscribed.

*Singh v. Choice Hotels, Int'l, Inc.*, 2007 WL 2012432, at *2 (N.D. Tex. July 11, 2007). The court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002). "[I]f the complaint relates only to the arbitration clause itself, the court should adjudicate the claim. If, however, the complaint relates to the entire agreement, then it must be referred to the arbitrator for decision." *Strawn v. AFC Enters., Inc.*, 240 F.3d 1074, *2-3 (5th Cir. 2000) (unpublished opinion); *see also Singh*, 2007 WL 2012432, at *2.

**B. The District Court's Order**

Plaintiffs initially assert that the district court addressed the validity and enforceability of the arbitration agreement when it held a hearing on their application for injunctive relief and ordered Defendants to post at each of their locations a notice stating that the TSL had no effect on any dancer's ability to bring a claim for wages owed. (doc. 48 at 4-5.)

Although their application for injunctive relief sought to void the TSL on grounds that it was created as an act of retaliation and was signed under duress and misinformation, the district court never reached the issue of whether the arbitration agreement was invalid or unenforceable at the hearing held on that application. (*See* doc. 11.) The notice it later ordered merely notified the dancers that the TSL had no affect on their *right to bring a claim* for wages owed. (*See* doc. 31 at 3) (emphasis added). The order did not foreclose arbitration as a forum for bringing a claim for wages owed. The issue therefore remains pending.

**C. Step One - Agreement**

As noted above, the first step in deciding whether to compel arbitration is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb*, 89 F.3d at 258. This

determination requires consideration of whether a valid agreement to arbitrate exists among the parties and whether the dispute is within the scope of the arbitration agreement. *Id.* In making this determination, courts should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Id.*

Under Texas law,[4] a party who seeks to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the asserted claims fall within its scope. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *Wachovia Sec. LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App. —Houston [1st Dist.] 2006, no pet.). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *See id.* The party opposing arbitration may show, for example, that the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *See Oakwood*, 987 S.W.2d at 573.

Here, Defendants have not presented any evidence showing the existence of a valid arbitration agreement with respect to any of the plaintiffs. The record contains an unsigned TSL and a declaration by plaintiff Rede that she signed it under circumstances arguably amounting to duress. (docs. 48-1 at 2-8; 11-1 at 5-6.) Since the existence of the agreement signed by Rede is uncontroverted and she has judicially admitted that she signed the TSL,[5] Defendants are not required

---

[4] The parties appear to agree that Texas law applies in this case; they both cite Texas law at the first step of the analysis. (*See* docs 48 and 64.) The TSL also states that it must be governed by and construed in accordance with Texas law. (doc. 48-1 at 6, ¶ 15.)

[5] Notably, Plaintiff signed the agreement on December 2, 2011 (doc. 11-1 at 5), before she opted-in as a plaintiff in this action on December 5, 2011 (doc. 7).

to formally introduce her signed TSL into evidence.[6] *See In re Whitfield*, 115 S.W.3d 753, 755-56 (Tex. App.—Beaumont 2003, no pet.) It is also uncontroverted that the language in the arbitration clause broadly covers any disputes under the TSL "as well as any disputes that may have arisen at any time during the relationship between the parties." (doc. 48-1 at 6.) Given these facts, Defendants have met their initial burden, but only with respect to Rede.

The burden now shifts to Plaintiffs to show why the agreement signed by Rede should not be enforced. Plaintiffs argue that the arbitration agreement fails as a matter of contract law because: (1) the agreement is illusory; (2) the agreement is unconscionable; and (3) the agreement was induced under duress. (doc. 48 at 5-13.)

**1. <u>Illusory</u>**

Plaintiffs first argue that the arbitration agreement is illusory and therefore invalid. (doc. 48 at 6-8.) Under Texas law, arbitration agreements, like all other contracts, must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citation omitted). "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract. But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (citations omitted). Still, an arbitration clause may be illusory "if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)). If one party to an arbitration agreement

---

[6] No evidence is present with respect to the remaining plaintiffs, however. There are declarations from 31 individuals in the record attesting that they signed the TSL, but none of those individuals are plaintiffs in this case. (*See* docs. 22-25.)

seeks to invoke arbitration to settle a dispute, and the other party can suddenly change the terms of the agreement to avoid arbitration, the agreement has been illusory from the outset. *Id.*

Here, the mutual obligation to arbitrate as well as the underlying agreement in the form of the TSL provides the consideration for the arbitration clause. Plaintiffs argue that the arbitration agreement is illusory because Defendants reserve the right to terminate it at any time. (doc. 48 at 6-7.) In making this argument, Plaintiffs refer to a provision in the TSL stating that upon default by a performer of any obligation to pay money or any non-monetary provision of the TSL, the TSL "shall immediately terminate." (docs. 48 at 7; 48-1 at 4, ¶ 12.) Plaintiffs argue that as the TSL does not define the terms "default" or "non-monetary provision, " Defendants have the sole authority to determine a default or violation of a non-monetary provision and therefore retain the unilateral right to terminate the arbitration agreement at any time. (doc. 48 at 7-8.) This argument does not take into account language in the TSL stating that "[t]he arbitration provision contained herein shall be self executing and shall remain in full force after expiration or termination of this Agreement." (doc. 48-1 at 7, ¶ 16.) Based on this language, Defendants do not retain the unilateral right to terminate the arbitration agreement at any time; instead, their mutual obligation to arbitrate continues even after the termination of the TSL.

Plaintiffs also argue that the arbitration agreement is illusory because it strips the arbitrator of the power to find that they are anything but "independent contractors." (doc. 48 at 8-9.) Plaintiffs explain that the TSL predetermines the outcome of an arbitration between the parties when it defines the relationship between the dancers and the defendants as that of a licensor-licensee and lessor-lessee and not of an employer-employee, and then states that "[t]he arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of" the TSL.

(doc. 48 at 9; doc. 48-1 at 5, 7, ¶¶ 9, 16.) Plaintiffs' interpretation of this provision neither takes into account language in the TSL stating that "an impartial independent arbitrator" will settle any disputes arising under the TSL, or language specifically contemplating a situation where "an arbitrator" rules "that the relationship is one of employer/employee." (*See* doc. 48-1 at 5-6, ¶¶ 9, 16.) Based on this language, the TSL does not foreclose a determination by an arbitrator that the relationship between the parties is that of an employer-employee.

The arbitration agreement is not void, invalid, or unenforceable as illusory.

**2. <u>Unconscionable</u>**

Plaintiffs next argue that the arbitration clause is unconscionable and therefore unenforceable because it imposes costs that are significantly greater than the costs they would incur in litigation, and prevents them from litigating their rights under the FLSA. (doc. 48 at 9-10.)

In Texas, an unconscionable contract is unenforceable. *See In re Poly-Am., L.P.*, 262 S.W.3d 883, 892 (Tex. 2010). Unconscionability under Texas law can either be procedural, if it involves circumstances surrounding the adoption of the arbitration provision, or substantive, if it concerns the fairness of the arbitration provision itself. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Haliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). Complaints regarding the prohibitive costs of arbitration are grounded in substantive unconscionability. *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). An arbitration clause may be substantively unconscionable if the existence of large arbitration costs could preclude a litigant from vindicating his rights in the arbitral forum. *Id.* (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). When a "party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the

likelihood of incurring such costs." *Green Tree Fin.*, 531 U.S. at 92. The parties resisting arbitration must provide "some individualized evidence that they will likely face prohibitive costs in the arbitration at issue and that they are financially incapable of meeting those costs." *Carter*, 362 F.3d at 300 (citation and internal quotation marks omitted).

Plaintiffs assert that the arbitration agreement requires arbitration to be conducted through the American Arbitration Association (AAA) and attach the Employment Arbitration Rules (EAR) for employment disputes before the AAA. (docs. 48 at 9-10; 48-1 at 9-15.) They claim that the initial filing fee for them is estimated at $8,200.00, in addition to a final fee in the amount of $32,000.00, a rental fee for a room for the final hearing, the expenses of the arbitrator, and the fees of the arbitrator, which were in excess of $18,000.00 in a recent employment arbitration involving their counsel. (docs. 48 at 10.) These fees are based on the assumption that the TSL will be classified as an individually-negotiated employment agreement, however. (*See* doc. 48-1 at 9-15.) Plaintiffs do not explain why the TSL would be construed as an individually negotiated contract as opposed to an employer-promulgated plan, which would cap their filing fees at $175.00, and require Defendants to pay a filing fee of $925.00 or $1800.00, and pay all hearing fees, all hearing room rental fees, and arbitrator expenses. (*Id.* at 9-10.) They also ignore the arbitration provision itself, which provides that "for any claims of the performer, based upon any federal, state, or local statutory protections, the club shall pay all fees charged by the arbitrator." (*Id.* at 7.) Finally, they fail to provide any evidence describing their inability to pay the costs or any evidence comparing the relevant costs of arbitration to the costs of litigation. *See Olshan*, 328 S.W.3d at 894 (requiring consideration of claimant's ability to pay arbitration fees and costs, the cost differential between arbitration and litigation, and whether the cost differential is so substantial so as to deter the bringing

of claims).

Plaintiffs have failed to meet their burden of providing individualized evidence showing that they will likely face prohibitive costs and that they are financially incapable of meeting these costs. *See Carter*, 362 F.3d at 300. They have not shown that the arbitration agreement is substantively unconscionable.

**3. <u>Induced Under Duress</u>**

Plaintiffs next contend that the arbitration agreement is void because it was induced under duress. (*See* doc. 48 at 11-13.) They offer plaintiff Rede's declaration describing the circumstances under which she signed the TSL. (*Id.*) While the argument appears to be an attack on the arbitration clause itself, it is directed at the validity of the entire agreement constituting the TSL, and is therefore not a valid basis for avoiding arbitration. *See Strawn*, 240 F.3d 1074; *Singh*, 2007 WL 2012432, at *2. The matter must accordingly be referred to the arbitrator for decision. *Id.*

Based on a consideration of Plaintiffs' defenses to the arbitration agreement itself, Rede agreed to arbitrate all claims arising out of her relationship with Defendants, including her FLSA claims. The analysis at the first step of the two-step inquiry favors arbitration.

**B. Step Two - Legal Restraints**

The next step is to determine whether any legal restraints external to the agreement foreclose arbitration of the claims at issue here. *See OPE Int'l*, 258 F.3d at 445-46. Plaintiffs essentially argue that a recent administrative decision by the NLRB, *In re D.R. Horton, Inc. and Michael Cuda*, NLRB Case No. 12-CA-25764, 2012 WL 36274 (Jan. 3, 2012), forecloses arbitration of their FLSA claims because it holds that class or collective action waivers are illegal in employment arbitration agreements and void the arbitration agreements. (doc. 48 at 13-14.)

In *D.R. Horton*, the NLRB found that an employer violated § 8(a)(1) of the National Labor Relations Act (NLRA) when it required employees covered by the NLRA, as a condition of their employment, to sign a mandatory arbitration agreement that precluded them from filing joint, class, or collective employment-related claims in any forum, arbitral or judicial. 2012 WL 36274, at *6-8. The NLRB found that by requiring only individual arbitration of employment-related claims and excluding access to any forum for collective claims, the employer interfered with employees' rights under § 7 of the NLRA to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* at *2-5. The NLRB explained that the question presented in the case was not whether the employees could effectively vindicate their statutory rights under the FLSA in an arbitral forum despite a prohibition against class or collective proceedings, but whether the employee can be required, as a condition of employment, to enter into an agreement waiving their rights under the NLRA. *Id.* at *12.

The *D.R. Horton* administrative decision does not bar arbitration of Rede's claims in this case. In *D.R. Horton*, the employees were required to sign a mandatory arbitration agreement foreclosing them from filing class or collective employment-related claims in all forums, arbitral or judicial, as a condition of employment. *See id.* at *1. The fact that the employees were barred from proceeding collectively in any forum was therefore a significant factor in the NLRB's decision in *D.R. Horton*. The waiver provision at issue in this case waives class or collective action only in a judicial forum, and not an arbitral forum. (doc. 48-1 at 7, ¶ 16.) It therefore does not meaningfully interfere with any rights Plaintiffs have under § 7 of the NLRA to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection," and does not violate § 8(a)(1) which makes it an unfair labor practice "to interfere with, restrain, or coerce employees in

the exercise of the rights guaranteed in" § 7. *See* 29 U.S.C. §§ 157 & 158(a)(1).

Since no legal restraints external to the TSL foreclose arbitration of plaintiff Rede's claims, she should be compelled to submit her claims to arbitration.

## III. RECOMMENDATION

Defendants' motion to stay this action and to compel arbitration should be **GRANTED** with respect to plaintiff Rede's claims and **DENIED** with respect to the claims of the remaining plaintiffs. If plaintiff Rede wishes to proceed with her FLSA claims, she should be compelled to litigate those claims in an arbitral forum; the current judicial proceedings with respect to those claims should be stayed.

**SO RECOMMENDED on this 17th day of August, 2012.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE