**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ERICA JONES, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-2743-O** |
| | § | |
| **JGC DALLAS LLC, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By order of reference dated February 17, 2012, this case has been referred for pretrial

management, including the determination of non-dispositive motions and issuance of findings of fact

and recommendations on dispositive motions.  Before the Court for recommendation are *Plaintiffs'*

*12(b)(6) Motion to Dismiss Defendants' Counterclaims*, filed February 16, 2012 (doc. 42); and

*Plaintiffs' Motion to Strike Defendants' Affirmative Defenses*, filed February 16, 2012 (doc. 43).

Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED**, and

the motion to strike should be **GRANTED** in part.

**I.  BACKGROUND**

In this putative Fair Labor Standards Act (FLSA) collective action, several current and

former dancers (Plaintiffs)[1] at the Jaguar Gold Club (JGC) have sued JGC's member clubs,[2] its

---

[1]Erica Jones, Crystal Winter, and Selisha Brooks were the original plaintiffs.  (*See* doc. 1.)  Ashley L. Cowart, Claudia
Rede, Brandy Richbourg, Krysta L. Lehman, LaSandra Turner, Debra Arnett, Esther Eliazo, Jan Blake, Misty Perry,
Carrie Peyton, Holly Hargraves, Natasha Cargile, Bridgette Batch, Kirstina Moore, Naomi Sepeda, Makeysha Isaac,
Bianca Cadena, Joanna Victorino, Surrynna Nabarette, Amanda Vaughn, Christina Alexander, Christina M. Nguyen,
Angela Watson, Amy Pogorelec, and Jinnene Kelly, opted in as party plaintiffs later on.  (*See* docs. 6-8, 15, 32, 36-37,
41, 46, 62-63, 70, 83.)  Perry, Hargraves, and Peyton later withdrew their claims against the defendants.  (*See* docs. 81
& 82.)

[2] The JGC family of gentlemen's clubs includes JGC Dallas LLC; JGC Tye, LLC; JGC Lubbock Gold, LLC; JGC
Odessa Gold, LLC; Gold Suit, Inc.; JGC Harlingen, LLC; JGC Longview, LLC; JGC Edinburg, LLC; JGC Phoenix,
LLC; JGC Beaumont, LLC.

owner and manager, Bryan Scott Foster, and its president of Operations, Kevin Richardson (collectively Defendants) under the. (doc. 35.) Plaintiffs claim Defendants  misclassified them as independent contractors instead of employees, failed to pay them minimum and overtime wages, retaliated against them for filing this lawsuit, and failed to keep adequate records of their work hours and pay. (*Id.*)

Defendants have asserted 55 affirmative defenses in their answer as well as counter-claims, alleging "breach of agreement – offset damages," "unjust enrichment – offset," and "breach of contract – mandatory arbitration." (*See* doc. 39.) Defendants mainly argue that Plaintiffs were not employees, but performed at different JGC locations pursuant to a licensing and lease agreement called the Temporary Space Lease Agreement (TSL), previous similar agreements, oral agreements, or their agreement in practice (collectively, the parties' agreements). (*Id.* at 18-19.) The parties' agreements allegedly allowed Plaintiffs to collect and retain a portion of the mandatory dance fees and all of their tips, and required them to pay rent or other compensation either by express agreement and/or by their actions. (*Id.*) In the event of their repudiation, the parties' agreements required Plaintiffs to return all dance fees earned by them to Defendants. (*Id.* at 21.)

With respect to their breach of contract counterclaim, Defendants assert that Plaintiffs have repudiated and/or breached their agreement, and as a result, Defendants are entitled to a monetary offset against any liability arising from Plaintiffs' claims in an amount equal to the proceeds from the dance sales. (*Id.* at 23.) As to their unjust enrichment claim, Defendants state that Plaintiffs will be unjustly enriched by receiving both wages *and* mandatory dance fees in addition to non-monetary benefits associated with their status as non-employee tenants, such as using Defendants' facilities, personnel, advertising, and good will. (*Id.* at 23-24) (emphasis in original). Defendants, on the

other hand, will retain no benefit from Plaintiffs' use of their assets and labor and the dance sales generated thereby. (*Id.* at 24.)  Defendants contend that they have been damaged as a direct and proximate result of Plaintiffs' conduct and are entitled to a monetary offset against potential liability arising from Plaintiffs' claims. (*Id.*)

Plaintiffs now move to dismiss Defendants' counterclaims under Fed. R. Civ. P. 12 (b)(6), and to strike their affirmative defenses pursuant to Fed. R. Civ. P. 12(f). (docs. 42, 43.)  With timely filed responses and replies, the motions are now ripe for consideration.

## II.  MOTION TO DISMISS COUNTERCLAIMS

Plaintiffs move to dismiss Defendants' counterclaims, entitled "Breach of Contract – offset damages" and "unjust enrichment – offset", for failure to state a claim upon which relief can be granted. (*See* doc. 42 at 1.)  They specifically argue that (1) counterclaims for set-offs are not permitted in this FLSA case, (2) there are no facts plausibly suggesting they breached an agreement, (3) the counterclaims are based on a legal impossibility, and (4)  the counterclaims are retaliatory in nature. (*Id.* at 4-9.)

**A.  Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most

3

favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even

if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery

is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation

omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*,

550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when

it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
> ity, it "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at

570; *accord Iqbal*, 129 S. Ct. at 1950-51.

## B.  Set-Off Counterclaims in FLSA Cases

Plaintiffs argue that Defendants' set-off counterclaims for breach of agreement and unjust

enrichment are not permitted in this FLSA case because the counterclaims will result in their

compensation falling well below the minimum FLSA wage requirements.  (doc. 42 at 4-5.)

In *Brennan v. Heard*, the Fifth Circuit held that set-offs and counterclaims are inappropriate

4

in cases brought to enforce the FLSA's minimum wage and overtime provisions. *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). In reversing an order permitting a set-off for the value of goods furnished by an employer to its employees, the Court reasoned that disputes over claims against back wages were foreign to the genesis, history, interpretation, and philosophy of the FLSA; the only economic feud contemplated by the FLSA involved the employer's obedience to minimum wage and overtime; cluttering FLSA proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the FLSA; and set-offs against back pay awards deprived the employee of the "cash in hand" contemplated by the FLSA. *See Heard*, 491 F.2d at 4.

In *Singer v. Waco*, 324 F.3d 813 (5th Cir. 2003), the Fifth Circuit considered whether a district court properly allowed an employer to set-off wage overpayments to employees in some work periods against shortfalls or deficiencies in wages in other work periods. Viewing the overpayments as pre-payments – i.e. payments the employer paid in advance to the employees to compensate them for the shortfalls they would receive in subsequent work periods – the Fifth Circuit held that the district court did not err in allowing the set-offs. *Id.* at 828. The Court reconciled its holding in *Singer* with its holding in *Heard* by observing that "the offsets permitted by the district Court [in *Heard*] caused the final awards of many of the defendants' workers to drop below the statutory minimum." *See Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 741 (5th Cir. 2010) (quoting *Singer*, 324 F.3d at 828, n.9). It pointed out that no party in *Singer* contended that the offset might cause the employees' wages to fall below the statutory minimum wage. *Singer*, 324 F.3d at 828, n.9.

In a subsequent case, *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010), the Fifth Circuit affirmed a district court's decision not to address the employer's counterclaims for

a set-off in an amount equal to damages caused by the employee's breach of his contractual obligation to notify the employer of his address change. The Court relied on *Heard*'s prohibition against set-offs in FLSA cases and distinguished the set-off allowed in *Singer* as one that "simply acknowledged that the [employer] has already paid the bulk of its overtime obligations." *Gagnon*, 607 F.3d at 1042-43. It pointed out that unlike *Singer*, the employer had not paid the employee "any additional sums that could be characterized as advanced or inappropriate amounts subject to an offset against the overtime owed to him." *Id.* at 1043.

*Martin* is the most recent opinion in which the Fifth Circuit not only discussed the earlier cases, but stated that it "continue[d] to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *See Martin*, 628 F.3d at 741-42. The Court clarified that "it was the unique character of the set-offs in *Singer* – that they represented overtime obligations already fulfilled – that allowed for a narrow exception to the bright-line rule spelled out in *Heard*." *Id.* Applying its previous cases, the Court held that the value of the severance agreement at issue could not be used to set-off unpaid overtime wages, even if the employee had allegedly breached the severance agreement by bringing suit for unpaid overtime. *Id.* at 742-43. The Court rejected the employer's argument that the case was similar to *Singer* because in both cases, the employer paid some extra money or benefits to the employee to which the employee was not otherwise entitled. *Id.* at 742. It explained the employer's damages flowed from a breach of contract and that the employer was not entitled to set-off those damages because unlike *Singer*, the money and benefits the employer paid to the employee "were not wage payments, advanced or otherwise; they were not related to her labors at all." *Id.* at 743.

Here, Defendants assert that any potential liability arising from Plaintiffs' claims should be

set-off by the value of the dance fees they received under the parties' agreements because Plaintiffs have repudiated or breached those agreements by bringing this lawsuit, and will be unjustly enriched. However, the dance fees sought as a set-off in this case fall under the rule in *Heard*, and not the narrow exception outlined in *Singer*.  Because Plaintiffs claim that they were not paid their minimum and overtime wages at all, any set-off allowed would result in their final awards dropping below the statutory minimum.  Additionally, the dance fees sought as a set-off do not represent wages pre-paid to Plaintiffs or wage obligations already fulfilled.  The dance fees are more akin to the set-off sought in *Martin* because they represent the damages flowing from Plaintiff's alleged repudiation or breach of the parties' agreement in bringing this lawsuit.  The breach of contract and unjust enrichment counterclaims for set-offs are not permitted in this FLSA action and should be dismissed without prejudice.[3]

### III.  MOTION TO STRIKE AFFIRMATIVE DEFENSES

Plaintiffs also move to strike Defendants' affirmative defenses under Rule 12(f), arguing that they consist of bald assertions without any facts in support.  (*See* doc. 43 at 1-6.)

In pertinent part, Rule 12(f) grants a court discretion to "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f).  Although the Fifth Circuit has previously observed that affirmative defenses are subject to the same pleading requirements applicable to complaints, it has not clarified whether this observation still holds true under *Twombly* and *Iqbal*'s plausibility standard. *EEOC v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex., Jan. 21, 2011) (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *but see Willins v. Credit Solutions of Am., Inc.*, 2010 WL 624899, at *1 (N.D. Tex. Feb. 23, 2010) (applying *Iqbal* and *Twombly* to

---

[3]  Because dismissal is required based on this issue, it is unnecessary to consider Plaintiff's remaining arguments for dismissal of this counterclaim.

affirmative defenses).  The plausibility standard in *Twombly* and *Iqbal* does not appear applicable to the pleading of an affirmative defense.  *Iqbal* and *Twombly* are grounded in Rule 8(a), which requires "a short and plain statement of the *claim showing that the pleader is entitled to relief*." *EEOC*, 2011 WL 208408, at \*2 (emphasis in original).  Rule 8(b) requires the pleader to "state in short and plain terms its defenses to each claim asserted against it," and Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense."  *Id.*  It is therefore more appropriate to apply the standard under Rule 8(c), which requires a defendant to "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."  *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)); *see also EEOC*, 2011 WL 208408, at \*2 (applying this same standard).  A plaintiff has fair notice of the defense when the defendant "sufficiently articulate[s] the defense so that the plaintiff [is] not a victim of unfair surprise."  *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993).  "[I]n some cases, merely pleading the name of the affirmative defense . . . may be sufficient."  *Woodfield*, 193 F.3d at 362.

The affirmative defenses at issue here can be divided into five groups.  The first group asserts the reasons why this case should not be treated or certified as a class or collective action.  (doc. 39 at 15-17.)  The asserted reasons include confusion, irreconcilable conflict, lack of manageability, and prejudice to putative class members and Defendants; lack of any ascertainable identifiable class; absence of commonality of interest; improper adjudication method; inadequacy of Plaintiffs as representatives of any putative class; no desire on the part of other performers to be classified as employees; insurmountable management problems; absence of common questions of law or fact and absence of similarly situated putative class members; antagonism to the class by a substantial

8

number, if not the majority, of putative class members; no benefit of class treatment to the court or the parties; absence of common questions of fact that pre-dominate; unique, individualized, and nominal actual damages, if any; individualized proof of Plaintiffs; lack of subject matter jurisdiction; and lack of a legitimate case or controversy. (*See id.*, ¶¶ 38-54.)  Defendants have asserted these defenses in such a manner that Plaintiffs have fair notice and will not be victims of unfair surprise.

The second group is based on allegations related to Plaintiffs' and Defendants' conduct. This group includes assertions that Plaintiffs failed to exhaust contractual remedies such as arbitration procedures; never conformed to the obligations or limitations of employees; agreed in an agreement that the business relationship between any individual defendant and any individual performer was not that of an employee-employer; delayed making any complaint or asking to be an employee; chose and demanded not to be treated or characterized as an employee and caused detrimental reliance by Defendants; failed to use reasonable care to avoid or mitigate any actual or implied damages; failed to file this action within the applicable statute of limitations; consented to, or requested, their relationships with Defendants; accepted the benefit of non-employee status without complaint; made intentional misrepresentations in their complaint; breached the implied covenant of good faith and fair dealing and came to court with unclean hands; breached their contracts with Defendants; and will be unjustly enriched if awarded any of the requested relief.  (*See id.* at 9-12, 14-15, ¶¶ 2, 5, 8, 10-12, 14-16, 18, 31, 36.)  It also includes assertions that Defendants acted in good faith at all times and were never involved in any negligent or willful misconduct.  (*Id.* at 12, 14-15, ¶¶ 32, 37.)  This group is grounded in the parties' pleadings, provides fair notice of the defenses being advanced, and does not result in unfair surprise.

The third group raises defenses directly applicable to FLSA claims.  This group asserts that

the FLSA claims are barred by the "artistic professions" exception. (*Id.* at 13, ¶ 28.) The group also asserts that the claims are barred because Defendants are not employers, joint employers, or part of any enterprise; monies Plaintiffs collected from the sales of the dance performances were not tips or gratuities; only monies over and above the amount collected from the sales of dance performances were tips or gratuities; each plaintiff earned more than, or substantially more than, any applicable minimum wage; and Plaintiffs' damages would be subject to set-offs, credits, and deductions. (*Id.* at 12-15, ¶¶ 19, 21, 29-30, 34.) It further asserts that Plaintiffs were tenants, lessees, and licensees, and that the FLSA does not apply to licensees, lessees, or independent contractors who work for their own advantage on the premises of another, are not denied the minimum standard or living, and do not perform under an arrangement which threatened fair competition. (*Id.* at 10, 15, ¶¶ 6, 35.) These assertions by their very nature put Plaintiffs on fair notice of the defenses being asserted.

The fourth group includes defenses involving bald assertions such as failure to state a cause of action, lack of standing, judicial and equitable estoppel, statute of frauds, accord and satisfaction, release, economic loss rule and prior payment, collateral estoppel, avoidable consequences, waiver, estoppel, fraud in the inducement, and in pari delicto. (doc. 39 at 9-11, 13-14, 17-18, ¶¶ 1, 7, 9, 13, 17, 20, 22-26, 33, 55.) While merely pleading the name of an affirmative defense may be sufficient in some cases, baldly naming the defenses without providing any factual support falls well short of putting Plaintiffs on "fair notice" of the defenses being asserted, especially since it is unclear how these defenses apply in this FLSA action. *See Woodfield*, 193 F.3d at 362. The defenses should therefore be stricken from the answer.

The fifth and final group of defenses involve unclear assertions. The answer asserts that the claims are barred because "the Federal Arbitration Act does not authorize class-action arbitration

the absence of an agreement authorizing class-wide arbitration"; "any applicable contract signed by any relevant Plaintiff does not authorize class-action arbitration the absence of an agreement authorizing class-wide arbitration"; and every respective plaintiff, as well as any putative class member asserting the same facts as any plaintiff, would be barred due to any employment relationship between any plaintiff and any defendant. (doc. 39 at 9, 13, ¶¶ 3-4, 27.) Because these assertions are unclear, and Defendants do not explain how they apply in the context of this action, they should also be stricken from the answer.

## IV. RECOMMENDATION

Plaintiffs' motion to dismiss Defendants' counterclaims should be **GRANTED**, and the breach of contract and unjust enrichment counterclaims for set-offs should be **DISMISSED** without prejudice. Plaintiffs' motion to strike Defendants' affirmative defenses should be **GRANTED** in part, and affirmative defense numbers 1, 3, 4, 7, 9, 13, 17, 20, 22, 23, 24, 25, 26, 27, 33, and 55 should be stricken.

**SO RECOMMENDED on this 17th day of August, 2012.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

12