**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ERICA JONES, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-2743-O** |
| | § | |
| **JGC DALLAS LLC, et al.,** | § | |
| | § | |
| **Defendants,** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated May 8, 2014 (doc. 226), before the Court is the *Joint Motion for Approval of Settlement Agreement*, filed April 27, 2014 (doc. 220). Based on the relevant filings and applicable law, the motion should be **GRANTED in part**.

### I.  BACKGROUND

This is a putative collective action suit by alleged current and former employees to recover unpaid minimum wages and overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. (*See* doc. 35.) Erica Jones, Crystal Winter, and Selisha Brooks (Plaintiffs) work or formerly worked as exotic dancers at Jaguar Gold Clubs (JGC)[1] throughout Texas and in Phoenix, Arizona. (*See* docs. 53-3; 53-4; 53-5.) They sued JGC's member clubs, its owner and manager, Bryan Scott Foster, and its president of operations, Kevin Richardson (collectively, JGC Defendants). (*See* doc. 35.) On October 31, 2012, Plaintiffs filed a second amended complaint

---

[1]  The JGC family of gentleman's clubs includes JGC Dallas LLC; JGC Tye, LLC; JGC Lubbock Gold, LLC; JGC Odessa Gold, LLC; Gold Suit, Inc.; JGC Harlingen, LLC; JGC Longview, LLC; JGC Edinburg, LLC; JGC Phoenix, LLC; and JGC Beaumont, LLC. (*See* doc. 35 at 1.)

adding Rick's Cabaret International, Inc. (Rick's) as a defendant.[2]  (Doc. 115 at 1, 8-9.)[3]  On April 18, 2013, Plaintiffs filed a third amended complaint adding JAI Dining Services (Tye), Inc., JAI Dining Services (Phoenix), Inc., JAI Dining Services (Odessa), Inc., JAI Dining Services (El Paso), Inc., JAI Dining Services (Longview), Inc., JAI Dining Services (Edinburg), Inc., JAI Dining Services (Beaumont), Inc., JAI Dining Services (Lubbock), Inc., JAI Dining Services (Harlingen), Inc., JAI Dining Services (Odessa II), Inc. (collectively, JAI Dining Services Entities) and Jaguars Acquisition, Inc. as defendants.  (Doc. 175 at 1.)  Plaintiffs asserted that JAI Dining Services Entities were subsidiaries of Jaguars Acquisition, Inc., which in turn was a subsidiary of Rick's (collectively, Rick's Defendants).  (*Id.* at 9.)  Plaintiffs allege that Defendants mis-classified them as independent contractors to avoid paying them minimum and overtime wages in accordance with the FLSA, failed to pay them such wages, failed to keep adequate records of their work hours and pay, and retaliated against them for filing this suit.  (Docs. 35, 115, 175.)

Defendants answered, denying liability and asserting counterclaims for breach of a licensing and lease agreement, unjust enrichment, and breach of an arbitration agreement.  (*See* docs. 179, 186.)  They maintain that Plaintiffs were not employees, but rather, licensees, lessees, or independent contractors who worked for their advantage on the premises of another.  (Docs. 179 at 12-23; 186 at 7-10.)  According to JGC Defendants, Plaintiffs performed at various JGC locations pursuant to a licensing and lease agreement called a Temporary Space Lease Agreement (TSL), or similar oral or written agreements or agreements in practice.  Under the TSL, Plaintiffs collected and

---

[2]  Rick's Cabaret International, Inc. allegedly purchased JGC Tye, LLC, JGC Lubbock Gold, LLC, JGC Odessa Gold, LLC, Gold Suit, Inc., JGC Harlingen, LLC, JGC Longview, LLC, JGC Edinburg, LLC, JGC Phoenix, LLC, and JGC Beaumont, LLC, while the suit was pending.  (Doc. 115 at 1, 8-9.)  Plaintiffs claim that Rick's is a "successor corporation in interest" to these defendants.  (Doc. 175 at 10.)

[3]  Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

retained a portion of mandatory dance fees and all of their tips, but they were required to pay Defendants rent or other compensation.  (Docs. 179 at 23-29; 186 at 11-15.)

Plaintiffs have provided declarations from class representatives as well as opt-in plaintiffs attesting to similarities in job duties and pay practices for exotic dancers at each of the JGC locations.[4]  (*See* docs. 53-3 through 53-7; 54-1 through 54-4; 55-1.)  They averred that their primary job duties consisted of dancing on stage and performing individual dances for club customers.  (*Id.*)  None of the clubs paid them any compensation; they had to pay a fee to the clubs for each shift they worked.  (*Id.*)  Plaintiffs testified that Defendants required dancers to share tips with non-eligible employees such as disc jockeys (DJs), house moms, and/or managers.  (*Id.*)  Defendants also set the rates to be paid for dances and encouraged customers to pay with house certificates/chips, which resulted in Defendants retaining a greater portion of the dancers' tips.[5]  (*Id.*)  On January 23, 2013, the Court granted Plaintiffs' motion to conditionally certify a collective action.  (Docs. 124, 141.)

In August 2013, the parties sought to stay the action pending mediation.  (Doc. 201.)  On April 27, 2014, the parties filed a joint motion for approval of the settlement agreement.  (Doc. 220.)

## II.  MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

The parties move for approval of the settlement agreement under 216(b) of the FLSA, and not under Federal Rule of Civil Procedure 23.  (*Id.* at 2.)

The FLSA provides that a suit may be instituted by "one or more employees for and in behalf

---

[4]  Jones, Winter, and Brooks are the original plaintiffs.  (*See* doc. 1.)  Subsequently, 201 dancers and one "house mom" opted-in as plaintiffs.  (*See* docs. 1, 35, 36, 37, 41, 46, 60, 62, 63, 70, 83, 100, 125, 156, 164, 171, 173, 174, 177, 178, 188, 199.)  Ten of the opt-in plaintiffs withdrew from the case without prejudice.  (Docs. 81, 150, 162, 182, 183, 200.)  The "house mom," filed a stipulation of dismissal with prejudice.  (Doc. 222.)

[5]  Customers purchased house certificates/chips with credit cards, and then redeemed the certificates/chips for dances.  Dancers turned in the certificates/chips for cash, but Defendants did not pay out the face value of the certificates/chips.  Plaintiffs testified that the portion retained by Defendants "grossly" exceeded the merchant fee paid to credit card companies.  (Docs. 52 at 8; 175 at 11-12.)

3

of himself or themselves and other employees similarly situated" to recover unpaid minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions. 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure in which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[6] *Id.*

"FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b)." *Pedigo v. Austin Rumba, Inc.*, 722 F.Supp.2d 714, 716 (W.D. Tex. 2010) (quoting *Villeda v. Landry's Rests., Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009)); *see also Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action. . . . Rather[,] the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Sims v. Hous. Auth. City of El Paso*, EP-10-CV-109-PRM, 2012 WL 10862119, at *2 (W.D. Tex. Feb. 29, 2012) (quoting *Liger v. New Orleans Hornets NBA Ltd., P'ship*, 2009 WL 2856246, at *2 (E.D. La. 2009)). "When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is fair and reasonable resolution of a bona fide dispute over the FLSA's provisions." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010); *see also Lynn's Food Stores*, 679 F.2d at 1355 (noting that

---

[6] Section 216(b) actions differ from Fed. R. Civ. P. 23 class actions in that members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). Rule 23 and § 216(b) class actions are "mutually exclusive and irreconcilable," and those who choose not to opt-in to a class action under § 216(b) are not bound by, and may not benefit from, the judgment. *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288-89 (5th Cir. 1975) (per curiam).

a court can enter a stipulated judgment when it "determine[s] that a settlement proposed by an employer and employees, in a suit brought by the employee under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.").

## A.      Bona Fide Dispute

First, courts must determine whether there exists a bona fide dispute regarding the amount of hours worked or compensation due. *Id.*; *see also Sims*, 2012 WL 10862119, at *2-3; *Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 631 (W.D. Tex. 2005) ("Plaintiff's claim for overtime benefits under the FLSA is dependent upon whether there was a bona fide dispute as to the amount of hours worked or compensation due at the time the parties entered into the compromise and release at issue.").

Here, Plaintiffs amended their complaint three times.  (Docs. 1, 35, 115, 175.)  Both sides filed multiple motions to dismiss.  (*See* docs. 38, 42, 43, 133, 136, 184, 185, 189.)  Plaintiffs' motions resulted in the dismissal of Defendants' counterclaims, but many of their affirmative defenses still remain.  (*See* docs. 94, 107.)  Defendants' motion to dismiss resulted in one of the Plaintiffs being compelled to arbitrate her claims.  (*See* docs. 93, 104.)  Two months after Plaintiffs filed their third amended complaint, the parties filed an agreed motion to stay the proceedings pending mediation.  (Docs. 175, 197.)  This suit remains in the preliminary stages, and one of the focal points of contention, i.e., whether Plaintiffs were employees, has not yet been resolved.  There is therefore a bona fide dispute regarding whether the overtime compensation is owed.  (*See* docs. 179; 220-1 at 3); *see also Martin v. Spring Break '83 Prod., L.L.C.*, 688 F.3d 247, 255-56 (5th Cir. 2012) (finding bona fide dispute where the parties disputed "over the number of hours for which they are owed their set rate of pay."); *Sims*, 2012 WL 10862119, at *6 ("The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers

cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver

of the FLSA's protections as a valid settlement of a legal claim."); *Altier v. Worley Catastrophe*

*Response, LLC*, No. 11-241, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012) ("A disagreements

[sic] over 'hours worked or compensation due' clearly establishes a bona fide dispute.").

**B.      Fair and Reasonable Resolution**

Once a court finds that there is a bona fide dispute, it reviews the settlement agreement to

determine whether it is fair and reasonable.  *Sims,* 2012 WL 10862119 at *3.

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do

not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court

approval to finalize a proposed class action settlement.  Thus, the Rule 23(e) standard encompasses

the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting

Rule 23(e) are analogous and applicable to the instant FLSA action."  *Id.* (citing *Altier*, 2012 WL

161824, at *14).  According to the Fifth Circuit, courts must consider the following six factors to

determine whether a settlement agreement is fair and reasonable:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

First, courts must determine whether the FLSA settlement agreement was an outcome of

fraud or collusion.  *Id.*  Here, the parties participated in mediation before an experienced mediator

in September 2013 and have been working on the settlement agreement since then.  (Doc. 220 at 5.)

The settlement agreement was a result of arms-length negotiations by experienced counsel on both

sides.  (Docs. 220 at 6; 220-1 at 19-21.)  It was signed by counsel for both sides as well as the representative Plaintiffs.  (Doc. 220-1 at 19-21.) There is, therefore, no evidence that the settlement agreement is "a product of fraud or collusion."  The first factor favors a finding of a fair and reasonable agreement.

The second factor considers the case's complexity, expense, and likely duration. *Parker*, 667 F.2d at 1209.  This suit was first filed on October 14, 2011.  (Doc. 1.)  While the suit has been pending for three years, it remains in the preliminary stage.  Moreover, Defendants contend that they will seek an appeal even if Plaintiffs ultimately prevail on their claims.  (Doc. 220 at 8.)  As the parties agree, the settlement agreement provides "substantial relief to the Plaintiffs" and eliminates "the inherent risks both sides would bear if this complex litigation continued to resolution on the merits." (Doc. 220 at 6-7.)  When considering the expenses and the likely duration of the suit, the second factor favors approval of the settlement agreement.

Third, even though this case has not progressed beyond the preliminary stage, the parties have participated in arbitration, mediation, and have conducted extensive discovery.  (Doc. 220 at 4-5.)  They contend, however, that if the settlement agreement is not approved, the case may "become even more complex, expensive and lengthy[]" because they would have to take additional discovery of Defendants' management witnesses as well as other opt-in plaintiffs.  (Doc. 220 at 7.) There are 194 plaintiffs who either have brought this suit or have opted-in.  (Doc. 220-2 at 2-8.) Further, the "issues of decertification and dispositive motions were avoided because of the progress of settlement negotiations." *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 726 (E.D. La. 2008).  The third factor favors approval of the settlement agreement.

The fourth factor asks whether there are any obstacles to the merits of the case.  Aside from the contentiousness of the suit, no substantive "obstacles to the merits of the case" have been

provided.  This factor likewise favors approval.

The fifth factor looks at the possible range of recovery and the certainty of damages.  The parties disagree on the calculation of damages.  (Doc. 220 at 7.)  The distribution calculations under the settlement agreement, however, are "based on the number of weeks each class member worked during the relevant period[,] which was taken from records and sworn responses by [] Plaintiffs regarding the dates they worked at the clubs."  (Doc. 220 at 8.)  The parties contend that the settlement agreement is "fair because it provides for reasonable and modest incentive awards to the four Class Representatives in the amount of $3,250."[7]  (Docs. 220 at 10-11; 220-1 at 5.)  In the face of uncertainty in damages and possible recovery, the settlement agreement provides concrete benefits to Plaintiffs and seems fair and reasonable.[8]

Finally, the terms of the settlement agreement "have been approved by Plaintiffs, their counsel, Defendants, and Defendants' counsel."  (Docs. 220 at 12; 220-1 at 13-21.)  When reviewing settlement agreements, courts are "entitled to rely upon the judgment of experienced counsel for the parties. . . . [and] absent fraud, collusion, or the like, [courts] should be hesitant to substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  The sixth factor favors finding that the settlement agreement is fair and reasonable.

Applying the six factors laid out by the Fifth Circuit, the settlement agreement appears fair

---

[7]   The class representatives are the named plaintiffs, Erica Jones, Crystal Winter, Selisha Brooks, and Claudia Rede. (*See* doc. 220-1 at 2.) An additional award is "not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.  The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the courts of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, No. 08-2784, 2011 WL 6367740, at *41, n. 65 (3d Cir. Dec. 20, 2011) (citations and internal quotation marks omitted); *see also Henderson v. Eaton*, No. Civ.A. 01-0138, 2002 WL 31415728, at *6 (E.D. La. Oc. 25, 2002).

[8]   Of the 191 remaining opt-in plaintiffs, ten will not receive any benefits under the settlement agreement because either they began working for Defendants after September 1, 2012, the settlement agreement cut-off date, or they were time-barred.  (*See* docs. 220 at 2; 220-2 at 8.)  Those ten opt-in plaintiffs, along with all other opt-in plaintiffs, will have an opportunity to reject the settlement agreement and preserve their right to file individual claims.  (*See* doc. 220-2 at 8.)

and reasonable.  The settlement agreement should be approved because there are bona fide disputes between the parties, and the settlement agreement is fair and reasonable.  *See Cotton*, 559 F.2d at 1331 ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

## C.    Attorneys' Fees

Plaintiffs' attorney seeks to receive 40% of the common fund offered by Defendants as attorneys' fees.  (Docs. 220 at 8-10; 220-1 at 5.)

"[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  Further, courts "must carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class[]" and they are not "bound by the agreement of the parties as to the amount of attorneys' fees." *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 673 (N.D. Tex. 2010) (citations and internal quotation marks omitted); *see also Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980); *In re Harrah's Entm't, Inc.*, No. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998) ("An application for attorney's fees from a common fund has no natural enemies, so judicial oversight is necessary to protect the interests of the class.  This is so even where no class member has objected to the proposed attorneys' fee award." (citation and internal quotation marks omitted)).

"The use of a common fund to pay attorney's fees in class action settlements is well established." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  The methods of calculating such fees vary, however. *See Akins v. Worley Catastrophe Resp., LLC*, No. 12-2401, 2014 WL 1456382, at *4 (E.D. La. Apr. 14, 2014) (listing the various methods of assessing reasonable attorneys' fees in a collective action involving a common settlement fund).  Here, the

parties request a "percentage" method of calculating fees.[9]  (Docs. 220 at 7, 8; 220-1 at 5.)

The Supreme Court has approved the use of the percentage method in common fund cases, *see Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984), and district courts in the circuit have applied it, *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases).  The Fifth Circuit has never "explicitly disapproved" of the method.  *In re OCA, Inc.*, No. 05-2165, 2009 WL 512081, at * 18 (E.D. La. Mar. 2, 2009).  However, it has approved cases using it "so long as the *Johnson* framework[10] [was] utilized to ensure that the fee awarded [was] reasonable."  *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 860 (E.D. La. 2007) (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 851–52 & n. 5 (5th Cir.1998); *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir.1996); *La. Power & Light v. Kellstrom*, 50 F.3d 319, 331 (5th Cir.1995); *Hoffert v. Gen. Motors Corp.*, 656 F.2d 161 (5th Cir. Unit A Sept.1981)).  "To account for the Fifth Circuit's preference for a *Johnson* analysis, numerous district courts in this Circuit have primarily applied a 'blended' percentage method to determine a reasonable fee award."  *Klein*, 705 F.Supp.2d at 674 (internal quotation marks omitted).  The "blended" percentage method "uses the percentage method to establish a benchmark fee and then checks this amount against a reasonableness test based on consideration of the *Johnson* factors."  *Id.*; *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 968 (E.D. Tex. 2000).

### 1.      The Percentage Method

"The *Manual for Complex Litigation* states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.'"  *Klein*, 705 F.Supp.2d at 675

---

[9] Under a percentage method, courts "determine[] an appropriate percentage of the overall recovery to award as a reasonable attorney's fee."  *Klein*, 705 F.Supp.2d at 673.

[10] The *Johnson* framework refers to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

(quoting *Manual for Complex Litigation (Fourth)* § 14.121 (2010)); *see also In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *4 ("The majority of common fund fee awards fall between twenty and thirty percent.  It is not unusual, however, for district courts in the Fifth Circuit to award percentages of approximately one third."); *In re Prudential-Bache Energy Income P'ship*, No. MDL 888, 1994 WL 150742, at *1 (E.D. La. Apr. 14, 1994) ("Historically, fee awards in common fund cases . . . were computed based upon a percentage of the fund, typical in the 25% to 33% range").  "If the request is relatively close to the average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award."  *Klein*, 705 F.Supp.2d at 675 (quoting Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees in Class Action Settlements: An Empirical Study*, 1 Journal of Empirical Legal Studies 1, 37-38 (2004)).

Here, the parties ask that Plaintiffs' counsel be awarded 40% of the total settlement amount, $920,000.  (Docs. 220 at 7, 8; 220-1 at 5.)  To justify the higher fee, their joint motion seeks judicial notice of the docket as proof of counsel's work in this case.  (Doc. 220 at 9.)  It notes that Plaintiffs' counsel "researched the law regarding Plaintiffs' claims before filing their Complaint[]" and filed "an emergency Application for Injunctive Relief" because evidence suggested that Defendants were coercing Plaintiffs and other potential members into signing agreements that might have limited their participation in the lawsuit.  (Doc. 220 at 9.)  He also took depositions of Defendants' managers, drafted motions, managed communication with the class representatives and class members, and participated in arbitration.  (*Id.* at 9-10.)  The motion notes that counsel is responsible for the fees for the administrative work on the claims notice and payment in the amount of $25,000.  (*Id.* at 10.)

The joint motion also relies on several cases that allegedly approved a fee of 40 %.  (*Id.* at 8-9.)  Four of the cases do not include any analysis of the settlement agreement and the attorneys' fees, and because the settlement agreements were sealed, it is not clear that the fee awarded was

11

actually 40%. *See Barnard et al. v. Intertek USA Inc.*, No. Civ. A. 4:11-cv-02198 (S.D. Tex., Jan. 8, 2014) (doc. 184); *Green-Johnson v. Fircroft, et al.*, No. Civ. A. 4:12-cv-01307 (S.D. Tex., Apr. 3, 2013) (doc. 50); *Covey, et al. v. Iron Cactus, et al.*, No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. Aug. 6, 2013); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*, No. Civ. A. 1:12-cv-00243 (W.D. Tex., Oct. 8, 2013) (doc. 71). One case did not involve an FLSA claim, and the court applied Bangladesh law. *See Karim v. Finch Shipping, Co., Ltd.*, 233 F.Supp.2d 807, 808 (E.D. La. 2002). These cases do not offer sufficient justification for a fee above the typical range.

With regard to Plaintiff's counsel's work, one court has found that a higher percentage was warranted based on the extraordinary complexity of the case. *See In re Combustion, Inc.*, 968 F.Supp. 1116, 1136 (W.D. La. 1997) (allowing a 36% recovery because the case was extraordinarily complex with multi-district action that had lasted 11 years with "roughly 160 complaints filed, 1140 answers, 1922 motions, with almost 1000 memoranda in support of or in opposition of these motions, 285 depositions . . . 90 hearings, at least one oral argument per month . . . and endless numbers of settlement conferences."); *see also Longden v. Sunderman*, 979 F.2d 1095, 1100 (5th Cir. 1992) (affirming a recovery of 27.5% percent in a securities fraud and Racketeer Influenced and Corrupt Organization Act class action that initially began as 93 individual lawsuits). Here, while the work reflected on the docket is significant, the case does not appear to be extraordinarily complex so as to justify a recovery of 40%. Accordingly, the Court finds that a benchmark fee of 30% is reasonable.

### 2.   *"Johnson" Factors*

The next step is consideration of "the *Johnson* factors to determine whether a deviation from the benchmark percentage range is appropriate and to test the overall reasonableness of the fee." *Klein*, 705 F.Supp.2d at 676. The twelve factors set out in *Johnson* are: (1) the time and labor

required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. "[N]ot every factor need be necessarily considered", however. *In re Combustion, Inc.*, 968 F.Supp. at 1135. "[T]his is particularly so in a common fund situation" because not all *Johnson* factors are applicable. *In re Harrah's Entm't, Inc.*, 1998 WL 832574 at *4 (quoting *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)).

With regard to the first factor, as noted, this suit has been pending for over three years. During this time Plaintiffs' counsel filed three amended complaints, multiple motions, and responses to Defendants' motions to dismiss. (Docs. 1, 35, 115, 175.) He filed a motion for injunction, conducted a hearing, and obtained a court order directing Defendants to post a notice in their facilities. (Docs. 10, 27, 31.) Plaintiffs' counsel succeeded in obtaining conditional certification of the class. (Docs. 51-52, 124, 141.) He also participated in arbitration, mediation, and actively negotiated the settlement agreement. (Doc. 220 at 9-10.) This work is adequately reflected in the 30% benchmark fee. *See Batchelder v. Kerr-McGee Corp.*, 246 F.Supp.2d 525, 532 (N.D. Miss. 2003) (noting that the manner of the litigation proceeded in a usual fashion and the resolution of the case came before trial, the first factor "[did] not warrant an adjustment to the benchmark[]" of 25 percent).

The second factor looks at the novelty and difficulty of the issues raised in the case. The

issues presented at this stage of the litigation were not so novel or difficult as to set this case apart. As for the third factor, this case required familiarity with the FLSA, but counsel was not necessarily required to have special skills favoring an increase in an attorneys' fee award.  The fourth factor considers the degree to which Plaintiffs' counsel was precluded from accepting other engagements. Plaintiffs' counsel has not presented evidence of any limitations that would merit an increase in the percentage fee.  The fifth factor examines the customary fee.  As noted, the percentage for attorneys' fees involving a common fund is typically 25% to 30%.  *See Klein*, 705 F.Supp.2d at 675.  These factors are adequately reflected in the benchmark percentage fee.

Sixth, Plaintiff's counsel took on the case on a contingency fee basis.  He has taken on greater risk than if he had taken the case on a fixed hourly fee.  "The contingent nature of the fee favors an increase in the typical benchmark percentage."  *Id.* at 678.

The seventh, tenth, and eleventh factors do not merit adjustment to the benchmark percentage.  The parties presented no evidence that Plaintiffs imposed any time limitations on counsel,[11] and they presented no evidence of a notable professional relationship that merits consideration.  There is also no evidence that this was an undesirable case.

The eighth factor considers the amount involved and the results obtained.  Here, Defendants offered to pay $2,300,000 under the settlement agreement.  (Doc. 220-1 at 5.)  Each plaintiff who worked during the relevant period is eligible to receive a cash award.  (*Id.* at 5; doc. 220-2.)  Further, the plaintiffs are not prevented from bringing a suit related to any violations that occurred after September 1, 2012.  (Doc. 220-1 at 6.)  Plaintiffs' counsel was able to bring an earlier settlement of

---

[11]   Some district courts have concluded that the seventh factor, the time limitations imposed by the client, is irrelevant in a class action suit. *See Batchelder*, 246 F.Supp.2d at 532 (citing *In re Catfish Antitrust Litig.*, 939 F.Supp. 493 (N.D. Miss. 1996)).

the case, allowing a cash award to Plaintiffs without the risk of drawn-out litigation.  The eighth factor favors an increase in the percentage of attorneys' fees.

The ninth factor considers Plaintiffs' counsel's experience, reputation, and ability.  Counsel performed his duty diligently and skillfully, responding to motions to dismiss, filing an emergency motion for injunction, receiving conditional certification of the class, and negotiating the settlement agreement.  His skill, however, is incorporated in the benchmark percentage.  The last factor requires comparison to awards in similar cases.  As already noted, the average contingency fee in common fund cases is 25 to 30 %, which does not favor an increase in the benchmark percentage of attorneys' fees.

Based on consideration of the relevant *Johnson* factors, and the finding that the majority of those factors weigh against an increase in the benchmark percentage recovery, the Court finds that a fee award of 30% is reasonable.[12]

## IV.  CONCLUSION

The joint motion for approval of the settlement agreement should be **GRANTED in part**, and the attorneys' fee award should be limited to 30 %.

**SO ORDERED on this 12th day of November, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[12]  The settlement agreement provides that if the attorneys' fee is adjusted by the Court, the remaining amount will be evenly distributed to Plaintiffs.  (Doc. 220-1 at 5, ¶4c.)

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16